UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NEW YORK CITY DISTRICT COUNCIL OF :
CARPENTERS PENSION FUND, et al.
: 04 Civ. 8792 (RMB) (DF)
             Plaintiffs,
: **REPORT AND**
  -against- **RECOMMENDATION**
:
N E B CONTRACTING, INC.,
:
             Defendant.
------------------------------------------------------------X

**TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.:**

On November 5, 2004, seven union benefit funds, by and through their trustees (collectively, "Plaintiffs"), filed a complaint with this Court to confirm and enforce an arbitration award rendered pursuant to a collective bargaining agreement ("CBA") between the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union") and N E B Contracting, Inc. ("Defendant"). Defendant was served with a Summons and Complaint through the Office of the Secretary of State of New York on November 15, 2004, pursuant to Section 306(b) of the New York Business Corporation Law and Rule 4(e)(1) of the Federal Rules of Civil Procedure. (*See* Dkt. 3.)

Defendant did not answer the Complaint, and, on January 19, 2005, Judge Berman granted Plaintiffs a default judgment, referring the matter to me to conduct an inquest and to report and recommend concerning damages. (*See* Dkt. 9.) On April 11, 2005, I issued a Scheduling Order requiring Plaintiffs to serve and file Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") no later than May 9, 2005. (*See* Dkt. 11.) In that Order, I cautioned Defendant that if, by June 8, 2005, it did not respond to Plaintiffs' submissions or contact my chambers in writing to request an in-court hearing, it would be my

intention to issue a report and recommendation on the basis of Plaintiff's written submissions alone.

On May 12, 2005, Plaintiffs filed their Proposed Findings and supporting papers. (*See* Memorandum of Law, dated May 5, 2005 ("Pl. Mem.") (Dkt. 12); *see also* Affidavit of Jason Fuiman, Esq. in Support of Default Judgment, dated May 5, 2005 ("Fuiman Aff.") (Dkt. 13).)[1] To date, Defendant has not filed any response to any of Plaintiffs' submissions, nor has it contacted my chambers to request a hearing.

For the reasons that follow, I recommend that, on the default judgment, Plaintiffs be awarded damages and attorneys' fees from Defendant as calculated below.

## **BACKGROUND**

As alleged in the Complaint, and as supported by the documentation submitted by Plaintiffs on this inquest, the relevant facts are as follows:

Plaintiffs are jointly administered, multi-employer, Taft-Hartley benefit funds and the trustees who have been designated by the Union and participating employers to administer those funds. (Compl. ¶ 4.) The benefit funds were established and are maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and are employee benefit plans within the meaning of sections 3(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1) and (3). (*Id.* ¶¶ 4-5.) Defendant is a New York corporation with its principal place of business in Brooklyn, New York, and an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5). (*Id.* ¶¶ 6-7.)

---

[1] Although Plaintiffs appear to have missed the Court's deadline for filing their Proposed Findings by three days, the Court will nonetheless consider Plaintiffs' submissions as timely.

At all times relevant to this litigation, Defendant was bound by the CBA, which, by its terms, became effective on July 1, 2000. (*Id.* ¶ 8.) Under the CBA, Defendant was required to, *inter alia*, furnish its books and payroll records when requested by Plaintiffs for the purpose of conducting an audit to ensure compliance with required benefit fund contributions. (*Id.*) The CBA provided that disputes arising under it be submitted to final, binding arbitration. (*Id.*) Furthermore, it appears that the CBA also required Defendant to pay costs arising from the arbitration. (*Id.* ¶ 13; *see also* Opinion and Default Award of Arbitrator, dated June 30, 2004, attached to Compl. as Ex. A, at 3.)

After Defendant failed to comply with Plaintiffs' demands to furnish its books and records for the purpose of conducting an audit (*see* Compl. ¶ 9), Plaintiffs submitted the dispute to arbitration before Roger Maher, the impartial arbitrator designated by the CBA ("Arbitrator"). (*Id.* ¶ 10.) On June 22, 2004, the Arbitrator held a hearing and rendered his award in a written opinion dated June 30, 2004. (*Id.* ¶ 11; *see also* Ex. A.) Although Defendant was given proper notice, Defendant did not appear at the hearing. (*See id.*)

The Arbitrator concluded that Defendant had failed to comply with the CBA as it relates to paying fringe benefit monies and directed Defendant to furnish the Plaintiffs with any and all books and records, for the period of March 16, 2000, through June 30, 2002, including but not limited to the cash disbursement section of the cash book, general ledger, job location records, daily time records and all certified payrolls. (Compl. ¶ 12; *see also* Ex. A. at 3.) The Arbitrator also concluded that Defendant was required to pay to Plaintiffs a sum of $2,300.00 pursuant to the CBA, representing costs incurred in the arbitration. (Compl. ¶ 13; *see also* Ex. A. at 3.)

Since the issuance of the arbitration award, however, Defendant has failed to make any

payments to Plaintiffs, nor has Defendant produced its books and records. (Compl. ¶ 14; *see also* Fuiman Aff. ¶ 14.)

Plaintiffs seek a default judgment in the amount of the Arbitrator's award of $2,300.00, plus an additional $2842.75 in attorneys' fees and $67.00 in costs that they incurred in seeking to enforce the award. (*See* Fuiman Aff. ¶ 19.) Plaintiffs also seek an Order requiring Defendant and its officers to make available to Plaintiffs or authorized representatives any and all books and records deemed necessary to conduct an audit, including, but not limited to, the cash disbursement section of the cash book, general ledger, job location records, daily time records, and all certified payrolls for the period March 16, 2000 through June 30, 2002. (*Id.*)

## DISCUSSION

Without a response from Defendant, this Court must assess whether Plaintiffs have provided a sufficient basis for the Court to determine damages. *Transatlantic. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Although "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," it does not reach the issue of damages. *Bambu Sales*, *Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In conducting an inquest, the Court accepts as true all of the factual allegations of the Complaint, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v.*

4

*Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Although the Court may hold a hearing to assess those damages, a hearing is not required where a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages "as it deems necessary and proper"); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

I. **ARBITRATION AWARD**

By entering into the CBA, Defendant agreed to furnish its books and payroll records when requested by Plaintiffs for the purpose of conducting an audit to ensure compliance with required benefit fund contributions, and it also agreed to submit disputes arising under the CBA to binding arbitration. Through detailed affidavits and exhibits, Plaintiffs have sufficiently demonstrated that they followed the agreed arbitration process and that they are entitled to the full amount of damages awarded to them by the Arbitrator: $2,300.00. (*See, e.g.,* Fuiman Aff. ¶¶ 8-13 (describing the arbitration process outlined by the CBA and discussing outcome of arbitration hearing); *see also* Compl., Ex. A, at 2 (finding in favor of Plaintiffs).) Accordingly, I recommend that Plaintiffs be awarded $2,300.00.[2] *See Transatlantic Marine Claims Agency*, 109 F.3d at 111 (approving inquest by affidavit "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment" (internal quotation marks

---

[2] "The award of prejudgment interest is in the discretion of the trial judge and there is a presumption in favor of pre-judgement interest." *Soft Drink & Brewery Workers Union Local 812, IBT v. Ali-Dana Bevs.*, No. 95 Civ. 8081 (SAS), 1996 U.S. Dist. LEXIS 10585, at *9 (S.D.N.Y. July 25, 1996). In the instant case, however, the Arbitrator did not award pre-judgment interest to Plaintiffs. (*See* Compl. ¶ 13; *see also* Ex. A. at 3).

omitted)).

## II.     ATTORNEYS' FEES AND COSTS

In addition, for their efforts to enforce the arbitration award, Plaintiffs request attorneys' fees of $2842.75 and costs of $67.00.  In support of this request, Plaintiffs cite 29 U.S.C. Section 1132(g)(1), which gives the Court discretion to award attorneys' fees and costs to Plaintiffs as the prevailing party in this matter.  Plaintiffs argue that, because Defendant failed to appear and did not offer any explanation for its conduct, and because the sole purpose of New York District Council of Carpenters Pension Fund, one of the Plaintiffs, is to recover unpaid pension fund contributions for the common good of its participants, Plaintiffs should be awarded attorneys' fees and costs.  (*See* Pl. Mem. at 2-3).  Based on Defendant's unjustified failure to abide by the Arbitrator's decision, Plaintiffs are entitled to their reasonable attorneys' fees and costs.  *See Soft Drink & Brewery Workers Union Local 812*, 1996 U.S. Dist. LEXIS 10585, at *8-10 (awarding attorneys' fees and costs, in action to confirm and enforce arbitration award made pursuant to a collective bargaining agreement, based on employer's failure to pay the award or to file a motion to vacate or modify).

In determining an appropriate fee award, the Court generally employs the "lodestar" method, which looks to the number of hours reasonably expended in performing the legal work at issue, and then multiplies that number by a reasonable hourly rate for counsel's services. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  When fixing a reasonable rate for attorneys' fees, courts may consider and apply "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11

(1984)).  The relevant "community" is the district in which the case was brought, and, in the Southern District of New York, Manhattan rates are considered the standard.  *S.W. ex rel. N.W. v. Bd. of Educ.*, 257 F. Supp. 2d 600, 603-04 (S.D.N.Y. 2003) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987); *Knoeffler v. Town of Mamakating*, 126 F. Supp. 2d 305, 313 (S.D.N.Y. 2000)).

The Second Circuit requires a party seeking attorneys' fees to support its request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Here, Plaintiffs have provided this type of information for the work performed by the law firm that represented Plaintiffs in connection with this case – the New York firm of O'Dwyer & Bernstein LLP.  An attorney from this firm has submitted an affidavit to the Court setting out the names of the attorneys and paralegals who worked on this matter, the number of hours they worked, and the nature of the work performed.  (*See* "Affidavit of Services," attached to the Fuiman Aff. as Ex. A).  This affidavit demonstrates that two attorneys and three paralegals at the firm spent a total of 15.45 hours on this matter, charging Plaintiffs a total of $ 2,842.75 in legal fees.  (*Id.* ¶¶ 2-12.)  These individuals' hours and the rates they charged in this case were as follows:

| | |
|---|---|
| Jason Fuiman (attorney) | 4.7 hours @ $320/hour |
| Raúl García (attorney) | 0.5 hours @ $320/hour |
| Vipin Varghese (paralegal) | 5.75 hours @ $115/hour |
| Alex Eason (paralegal) | 4.0 hours @ $115.00/hour |
| Jonah Susskind (paralegal) | 0.5 hours @ $115.00/hour |

(*Id.*)  The services performed by the attorneys included reviewing the case file, approving and finalizing the submissions required to obtain a default judgment, and participating in a telephone conference with the Court regarding an adjournment of a pre-trial conference.  (*See id.* ¶¶ 3, 5, 8, 10, 12.)  The services performed by the paralegals included gathering information and drafting the Summons and Complaint, preparing the Summons and Complaint for service and mailing them, reviewing and filing the affidavit of service, and drafting and preparing the submissions required to obtain a default judgment.  (*See id.* ¶¶ 2, 4, 6-7, 9, 11.)  Plaintiffs' documented hours for their attorneys and for their paralegals appear reasonable.

With respect to the hourly rates requested for Plaintiffs' attorneys, Plaintiffs have failed to submit evidence concerning either the experience level of the attorneys who worked on the case or the prevailing market rate in this district for similar work.  Nevertheless, the Court has ample discretion to determine whether the hourly rates that Plaintiffs request for their attorneys are reasonable.  *See Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (holding that court may rely on its own knowledge of prevailing rates in community to determine reasonable hourly rates); *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 885 (2d Cir. 1983) (holding that court may look to other recent decisions to determine reasonable hourly rates).

In March 2004, Plaintiffs sought attorneys' fees in a similar case, involving the same law firm, one of the same attorneys (Mr. Garcia), and one of the same paralegals (Mr. Varghese).  In that case, with respect to Mr. Garcia and Mr. Varghese, approval was sought for the same hourly rates that Plaintiffs now seek approval for in this case, namely, $320 per hour for Mr. Garcia, and $115 per hour for Mr. Varghese.  Based on prevailing rates at that time, however, I

recommended that the hourly rates sought in that case for Mr. Garcia and Mr. Varghese be reduced to $250 and $75, respectively.

The rates sought by Plaintiffs in this case for work performed from November 2004 through May 2005 still appear to be somewhat higher than the average rates charged by law firms in this district. *See, e.g., Cablevision Sys. N.Y. City Corp. v. Pierce*, No. 04 Civ. 9863 (RCC) (GWG), 2005 U.S. Dist. LEXIS 25014, at *12-15 (S.D.N.Y. Oct. 27, 2005) (Report and Recommendation) (concluding on inquest that hourly rates of $165-$200 for attorneys and $85-$95 for paralegals were reasonable); *Aetna Life Ins. Co. v. Licht*, No. 03 Civ. 6764 (PKL) (JCF), 2005 U.S. Dist. LEXIS 12950, at *12-13 (S.D.N.Y. June 14, 2005) (finding, *inter alia*, that $95 hourly rate sought on inquest for paralegal work was reasonable), *adopted by Aetna Life Ins. Co. v. Licht,* No. 03 Civ. 6764 (PKL) (S.D.N.Y. July 5, 2005); *Cablevision Sys. N.Y. City Corp. v. Guignard*, No. 02 Civ. 2912 (RJH)(KNF), 2005 U.S. Dist. LEXIS 11253, at *17-18 (S.D.N.Y. June 3, 2005) (concluding on inquest that $145 hourly rate for attorney and $85 rate for paralegal were reasonable), *adopted by Cablevision Sys. N.Y. City Corp. v. Guignard*, No. 02 Civ. 2912 (RJH) (S.D.N.Y. Oct. 21, 2005); *Alston v. Wall St. Garage Parking Corp.*, No. 03 Civ. 5418 (RLC) (JCF), 2004 U.S. Dist. LEXIS 9676, at *5 (S.D.N.Y. May 28, 2004) (concluding on inquest that $275 hourly rate for attorney was reasonable), *adopted on* September 16, 2004 (Carter, J.).

Thus, while recognizing that the total fees sought in this case are relatively modest, I nonetheless recommend that the hourly rates requested here be somewhat reduced, so as to more closely accord with prevailing rates in this district. I therefore recommend that Plaintiffs' attorneys' fees award be calculated as follows:

| | |
|---|---|
| Jason Fuiman (attorney) | 4.7 hours @ $275/hour |
| Raúl García (attorney) | 0.5 hours @ $275/hour |
| Vipin Varghese (paralegal) | 5.75 hours @ $85.00/hour |
| Alex Eason (paralegal) | 4.0 hours @ $85.00/hour |
| Jonah Susskind (paralegal) | 0.5 hours @ $85.00/hour |

Under these reduced rates, Plaintiffs' total award of attorneys' fees would be $2301.25.

Additionally, Plaintiffs request $67.00 to cover the fees charged by a process server. (*Id.* ¶ 13.) As this cost appears reasonable, I recommend that Plaintiffs be awarded both attorneys' fees of $2301.25 and $67.00, for a total of $2368.25.

## **CONCLUSION**

For the foregoing reasons, I recommend that Plaintiffs be awarded:

(1) damages in the amount of $2,300.00;

(2) attorneys' fees in the amount of $2301.25; and

(3) costs in the amount of $67.00.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, United States Courthouse, 40 Centre Street, Room 201, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE OBJECTIONS

WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
January 30, 2006

Respectfully submitted,

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies To:

Hon. Richard M. Berman, U.S.D.J.

Jason Fuiman, Esq.
Raul Garcia, Esq.
O'Dwyer & Bernstein, L.L.P.
52 Duane Street
New York, NY 10007

N E B Contracting, Inc.
197 Columbia Street
Brooklyn, New York, 11231